IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

FILED
FEB 8 2006
ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

| | |
|---|---|
| AGNES SHEA, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ASSOCIATED WHOLESALE GROCERS, INC., et al.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. CIV-03-403-W<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

This matter comes before the Court on the Motion for Class Certification filed by plaintiff Agnes Shea pursuant to Rule 23, F.R.Civ.P. Defendants Associated Wholesale Grocers, Inc. ("AWG") and HAC, Inc. ("HAC"), have responded in opposition to the motion, and based upon the record, the Court makes its determination.

A suit does not become a class action merely because it has been demanded in a party's pleading. Rule 23 provides "the appropriate analytical framework for class certification questions," Shook v. El Paso County, 386 F.3d 963, 971 (10th Cir. 2004), and to prevail, a plaintiff not only must establish the four prerequisites found in Rule 23(a) but also must establish that the proposed class qualifies under one of the three categories set forth in Rule 23(b).

In this connection, Rule 23(a) provides that

"[o]ne or more members of a class may sue . . . as [a] representative part[y] on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims . . . of the representative part[y] are typical of the

claims . . . of the class, and (4) the representative part[y] will fairly and adequately protect the interests of the class."

Shea filed this action seeking relief under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., title 42, section 1985 of the United States Code and state law. She has contended that she was employed by Homeland Stores ("Homeland") on or about August 1, 1996, Second Amended Complaint (April 19, 2005) at 2, ¶ 5,[1] that she requested and received FMLA leave, that while she was on leave, Homeland was acquired by AWG, "acting with or through HAC," id. at 3, ¶ 16, and that "[i]n connection with the acquisition, . . . [AWG] and HAC instructed the Homeland managers to hire all . . . [previous Homeland] employees . . . except . . . those employees who were on [FMLA] leave . . . or [those on medical leave for work-related injuries as permitted by Oklahoma workers' compensation laws] . . . ." Id. at 4, ¶ 18.

She has further contended that "[t]he actions of . . . [AWG and HAC] were part of a common business plan and decision applicable to a large class of employees," id. at 5, ¶ 22, and she has defined this "large class of employees" as

> "[a]ll persons on workers' compensation leave as of September 7 or September 8, 2002[,] [and] [a]ll persons on [Family and Medical Leave Act] leave as of September 7 or September 8, 2002."

Id. at 5, ¶ 23.[2]

---

[1] For purposes of the instant Motion, the Court has recited only those allegations in the Second Amended Complaint and finds it unnecessary to set forth in more detail the events giving rise to, and surrounding, this controversy.

[2] The Court notes that Shea in her Motion has contended that the class would also include "those persons . . . who had taken leave in the year prior to . . . [the defendants' acquisition]." Motion for Class Certification at 11; e.g., id. at 10 (discussing the "[d]efendants' common plan to terminate and/or not-rehire persons who were either on leave at the time they took ownership or who had recently taken leave"). Despite such expansive language, the Court has considered the proposed class to be as it is defined in the Second Amended Complaint.

As stated, the first precondition to maintaining a class action under Rule 23(a) pertains to the practicability of joinder, and in this connection, the parties have advanced various factors for the Court to consider in determining whether Shea has satisfied this requirement.

The first factor is numerosity. Shea has contended that there are fifty-six (56) proposed class members, and she has submitted, without any further explanation, description or discussion, a list[3] of names and corresponding numbers that indicate the Homeland facility at which each individual was employed.

The defendants, on the other hand, have provided detailed information regarding the individuals whose names appear on the list. The defendants have contended that on September 7, 2002, there were only eight (8) Homeland employees on FMLA leave: Betty Holman, Shirley Lax, Cynthia Schrimshire, David Gordon, Shawna Miller, Ray Roberts, Shea and Melissa Smith.[4] Five (5) of these individuals–Holman, Lax, Schrimshire, Gordon and Smith–were subsequently rehired.

The defendants have also identified an additional seven (7) individuals who had taken FMLA leave, but who arguably were not eligible for the same: Kristy Alexander, Carl Darden, Debbie Edge, Dick Ramer, James Redford, Clayton Stubblefield and Alison Thomas. The defendants have further identified fourteen (14) individuals whose names

---

[3]The list was prepared by Prentess Alletag, Homeland's Vice President of Human Resources, at the direction of HAC/AWG. The list included certain information about Homeland's employees, including their names, employment status (full time, part time, active or on leave), job titles, hiring dates and rates of pay.

[4]Three (3) individuals had previously taken FMLA leave and had returned to work: Mary Coe, Carolyn Frye and Loren McKenzie. All were hired by the defendants.
Frankie Brown had taken FMLA leave, but had not returned to work at Homeland. She was subsequently hired by the defendants some weeks after the acquisition was accomplished.

appear on Shea's list who had taken and exhausted their FMLA leave prior to September 7, 2002, but who had not returned to work prior to that date or sought continued employment.

The defendants have identified twenty-three (23) individuals who brought claims for work-related injuries under Oklahoma workers' compensation laws while they were employed by Homeland. Eleven (11) were considered "temporarily totally disabled" on September 7, 2002, and had not yet been released by their physicians to return to work. Seven (7) had been classified as "permanently disabled" as of the date the acquisition became effective. The defendants have further reported that none of these individuals ever sought continued employment or requested that they be permitted to return to work.

Despite Shea's conclusory reference to fifty-six (56) individuals as potential class members, it appears based upon the record that the proposed class would have at most twenty-six (26) members: three (3) individuals who were on FMLA leave and twenty-three (23) individuals who, without consideration of the extent of their disability, were on workers' compensation leave as of September 7 or September 8, 2002, and who were not rehired.

The second factor identified by the parties concerns the geographic location of the proposed class members. In this connection, the Court must consider whether these individuals are geographically concentrated or whether they are geographically diverse. In this case, the potential class members are all located in the State of Oklahoma, but dispersed among the three federal judicial districts.

A third factor deemed relevant by the parties pertains to the size of each individual claim. In this instance, Shea has argued that the amount of lost wages, if any, to be recovered by each class member is small, and that such amount is far outweighed by the

4

potential cost of litigation. Shea has further argued that the recovery of any additional damages, such as liquidated or punitive damages, does not alleviate the financial hardship of separate lawsuits. Shea has not however presented proof that any potential class member lacks the financial resources to litigate his or her individual suit, that it is economically infeasible to pursue individual litigation or that financial considerations have inhibited any class member from pursuing his or her own claim.

Shea has the burden of proving impracticability of joinder, and the Court finds that Shea has failed to do so. The putative class is not so large that joinder would be unmanageable. Indeed, the size of the proposed class, the absence of any supported claims of inconvenience and financial hardship and the fact that the identity of each proposed class member is known, facilitating discovery of their individual addresses for purposes of service, coupled with the fact that all of the purported members "are located in . . . the same general geographic location . . . weigh[] in favor of the practicability of joinder." Independent School District No. 89 v. Bolain Equipment, Inc., 90 F.R.D. 245, 248 (W.D. Okla. 1980)(citations omitted).

As stated, Rule 23(a) also requires the existence of questions of law or fact common to the class. Shea has argued that this requirement is easily satisfied because the defendants adopted a policy that all employees on leave (regardless of the type of leave) at the time of acquisition would not be rehired.

The defendants have contended that Shea's allegations of class wide discriminatory treatment do not satisfy the requirement of "commonality." The Court agrees under the facts and circumstances of this case.

Adverse employment actions are generally amenable to class treatment; variations in the circumstances of the proposed class members and underlying factual differences are not fatal to maintenance of a class action if the class members have at least one issue of fact or one question of law in common. However, as the United States Supreme Court stated in General Telephone Company of the Southwest v. Falcon, 457 U.S. 147 (1982),

> "[t]here is a wide gap between (a) an individual's claim that [s]he has been . . . discriminat[ed] . . . [against], and h[er] otherwise unsupported allegations that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as the individual, such that the individual's claim and the class claims will share common questions of law or fact . . . ."

Id. at 157.

Assuming arguendo for purposes of the instant motion that Shea has sufficiently alleged a corporate policy or decision that adversely affected her, Shea has only presented conclusory allegations that that same corporate policy or decision affected other Homeland employees who were on leave as of September 7 or September 8, 2002. Case law and commentators teach that conclusory allegations that other employees have suffered adverse employment actions are insufficient. E.g., 5 Newberg on Class Actions § 24.13, at 50-52 (3d ed. 1992). Rather, a plaintiff must make at least a prima facie showing "in the form of detailed complaint allegations, supporting class motion affidavits, or [other] . . . evidence . . . ," id. § 24.13, at 53 (footnote omitted); Falcon, 457 U.S. at 157-59, that "suggest[s] that the class members all are victims of the discriminatory policy and that the named plaintiff[] . . . [is] not the only individual[] who ha[s] suffered the alleged discrimination . . . ." 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1763, at 252 (3d ed. 2005)(footnote omitted). Shea however has produced no reliable

evidence that the employment of any particular individual on leave was affected as a result of this alleged corporate policy or decision.

Rule 23(a) also requires that Shea's claims be typical of the claims of the proposed class members. This prerequisite, unlike the first two that "focus on characteristics of the class," 1 Newburg on Class Actions § 3.13, at 71 (3d ed. 1992), "focus[es] instead on the desired characteristics of the class representative." Id. (footnote omitted). A relationship must exist been those claims advanced by Shea, as the representative party, and those claims for which the other class members seek redress. This prerequisite is satisfied, regardless if varying fact patterns underlie the individual claims, as long as Shea's alleged "injury arises from or is directly related to a wrong to [the proposed] . . . class, and that wrong includes the wrong to . . . [Shea]." Id. § 3.13, at 76; e.g., id. § 3.13, at 76-77 (claim is typical if it arises from same event or practice or course of conduct that gives rise to the claims of other class members).

In this connection, Shea has argued that although the type of leave—FMLA leave vs. leave for work-related injuries—varies among the potential class members, this fact is irrelevant since the defendants had a common corporate policy of denying employment to individuals on any type of leave. The Court finds, regardless of, and despite, the differences in the underlying legal theories,[5] that Shea's request for class certification is defeated by her conclusory allegations of discriminatory treatment. Shea has presented no evidence, by affidavit or otherwise, or made any showing that another identifiable class

---

[5] The Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and the Oklahoma Workers' Compensation Act, 85 O.S. § 1 et seq., differ greatly with regard to inter alia the triggering events, an employee's entitlement to relief and the available defenses and remedies.

member was subjected to the discriminatory corporate policy or decision about which she has complained and sustained injury as a result thereof.

The final factor to be considered under Rule 23(a) is adequacy of the class representative, and it embraces both the competence of Shea's legal counsel and Shea's interest in prosecuting this action. Since Shea has not met her burden with regard to the first three prerequisites of Rule 23(a), the Court finds it unnecessary to discuss this fourth factor in detail. It is sufficient to note that Shea's counsel is sufficiently qualified and experienced to pursue a class action and that Shea's interest in litigating this matter, despite her inadequate showing with regard to the issues of commonality and typicality, would arguably not conflict with the interest of any other potential class member.

Rule 23 does not entail consideration of the merits of the case; rather, class certification is a procedural matter and requires only a determination that each of the Rule's requirements have been met. After engaging in the "rigorous analysis" commanded by Falcon, 457 U.S. at 161, the Court finds that Shea has not satisfied all four of the prerequisites of Rule 23(a),[6] and accordingly, in its discretion, DENIES Shea's Motion for Class Certification filed on December 5, 2005.

ENTERED this ___8th___ day of February, 2006.

_____
LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[6]The question of class certification also requires consideration of Rule 23(b). However, since Shea has failed to satisfy the prerequisites articulated in Rule 23(a), the Court has not considered whether the proposed class qualifies under one of the three categories of Rule 23(b).